IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LAURENCE MIDLER, *as Trustee of the,*
*Laurence and Shari Midler Trust*; DAVID
COMDEN; TINA COMDEN; and PAMELA
HELLENBRAND, *individually and on behalf*
*of all others similarly situated*,

        Plaintiffs,

      v.

NINKASI HOLDING COMPANY, INC., *an*
*Oregon corporation*; NIKOS RIDGE;
JOSHUA LANDAN; WATKINSON LAIRD
RUBENSTEIN, P.C., *an Oregon professional*
*corporation*; STRADLING YOCCA CARLSON
& RAUTH, P.C., *a California professional*
*corporation*,

        Defendants.

Case No. 6:26-cv-00496-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiffs originally filed this putative class action in state court alleging violations of Oregon Securities Law. Compl. ¶¶ 1, 87–99, ECF No. 1-1. Defendants, relying on the Class Action Fairness Act ("CAFA"), removed the case to federal court. Defs.' Notice of Removal ¶ 8, ECF No. 1; 28 U.S.C. § 1332. Plaintiff now moves to remand, claiming Defendants failed to establish the requirements set by CAFA regarding numerosity and the amount in controversy have been met. Pls.' Mot. to Remand 1, ECF No. 18.

1 – Opinion and Order

Defendants have met their burden to show, by a preponderance of the evidence, the amount in controversy exceeds CAFA's threshold of $5 million.[1] And for the purpose of evaluating jurisdiction, the Court finds the putative class exceeds 100 members. Accordingly, Plaintiffs' Motion to Remand, ECF No. 18, is **DENIED**.

## BACKGROUND

Representative Plaintiffs Laurence Midler, as Trustee of the Laurence and Shari Midler Trust, David Comden, Tina Comden, and Pamela Hellenbrand are California residents who invested in Wings&Arrow, LLC ("Wings&Arrow") during the class period (June 1, 2023, to October 24, 2024).[2] Compl. ¶¶ 1, 10–12, 80.

Defendants Ninkasi Holding Company. Inc. ("Ninkasi"), Nikos Ridge, and Joshua Landan allegedly raised more than three million dollars from dozens of investors through "material misrepresentations and omissions." Compl. ¶ 1. As claimed by Plaintiffs, Wings&Arrow solicited their investments to facilitate a merger with Ninkasi and an eventual buyout by a private equity firm. *Id.* ¶ 26. Plaintiffs allege they were told their investments bought them equity in Great Frontier Brewing ("Great Frontier"), the result of the "purported" merger between Wings&Arrow and Ninkasi. *Id.* ¶¶ 3, 27; Pls.' Mot. to Remand 2. Plaintiffs maintain the merger never occurred. Compl. ¶ 69.

Plaintiffs filed a Complaint on behalf of the putative class in Multnomah County Circuit Court on February 13, 2026, alleging violations of Oregon Securities Law and seeking recovery of the $3 million solicited from investors. Compl. 1, ¶ 9. Beyond alleging damages totaling the

---

[1] "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

[2] The putative class includes individuals who purchased securities in Wings&Arrow between June 1, 2023, and October 24, 2024, excluding "(a) Defendants; (b) the past and present officers and directors of Defendants or Wings&Arrow, and their respective families and affiliates; (c) registered investment advisors and investment advisor representatives; and (d) any investor who received finder's fees or other consideration from Defendants or Wings&Arrow in connection with referring investors to Defendants or Wings&Arrow." Compl. ¶ 80.

amount invested, the Complaint seeks interest from the date of payment at the following rate: 9% or the rate provided in the securities, whichever is greater. *Id.* 44.

Plaintiffs bring this action against Ninkasi, its current CEO Nikos Ridge, and Josh Landan, founding CEO of Wings&Arrow. Compl. ¶¶ 15, 18. Plaintiffs also seek recovery from Ninkasi's primary outside legal counsel, Watkinson Laird Rubenstein, P.C., as well as Wings&Arrow's primary outside counsel, Stradling Yocca Carlson & Rauth, P.C. *Id.* ¶¶ 19–20.

On March 13, 2026, Defendants timely removed Plaintiffs' Complaint to this Court pursuant to CAFA. Defs.' Notice of Removal. Defendants assert the Complaint "seeks a recovery of no less than $4,518,841.03, inclusive of the consideration paid for the securities and interest." *Id.* ¶ 28. Adding $1,129,710.26 in prospective attorney fees, Defendants allege an aggregate amount in controversy of no less than $5,648,551.29. *Id.* ¶ 28. Finally, Defendants observe the class, "as pleaded," exceeds 100 people as required by CAFA. *Id.* ¶ 9 (citing 28. U.S.C. § 1332(d)(5)(B)).

## LEGAL STANDARD

CAFA confers federal jurisdiction over class actions in which (1) the amount in controversy exceeds $5 million, exclusive of interest and costs; (2) at least one plaintiff is diverse from any defendant (minimum diversity); and (3) class members number at least 100. *E.g., Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).

While "Congress intended CAFA to be interpreted expansively," the proponent of federal jurisdiction bears the burden of establishing the statute's threshold requirements. *Id.* at 1197 (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (holding the burden of establishing removal jurisdiction under CAFA rests with the removing defendant).

3 – Opinion and Order

A notice of removal need only contain "plausible allegations of [CAFA's] jurisdictional elements," not "'evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1197). The removing defendant "may rely on reasonable assumptions" to show it has satisfied CAFA's jurisdictional conditions. *Id.* at 922 (citing *Ibarra*, 775 F.3d at 1197–99).

When a plaintiff challenges the defendant's proposed amount in controversy, the parties submit proof on the issue. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)). The court then decides if the amount in controversy exceeds $5 million and thus whether federal jurisdiction exists. *Id.* So long as a defendant "plausibly alleges a basis" for removal, the court must permit the defendant "to show by a preponderance of the evidence that the jurisdictional requirements are satisfied" before remanding. *Arias*, 936 F.3d at 924.

The amount in controversy under CAFA "reflects the ***maximum*** recovery the plaintiff could reasonably recover." *Id.* at 927 (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)). In other words, "'the amount at stake in the underlying litigation.'" *Chavez*, 888 F.3d at 417 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)).

## DISCUSSION

I.  **Defendants show, by a preponderance of the evidence, the amount in controversy exceeds $5 million.**

a.  **The amount in controversy should include the interest specified in Oregon Securities Law.**

Plaintiffs oppose Defendants' alleged amount in controversy because it includes over $1.2 million in interest. Pls.' Mot. to Remand 7 (citing Defs.' Notice of Removal 6); Defs.' Notice of

Removal ¶¶ 18–22. Under CAFA, the amount in controversy excludes pre-judgment interest arising from a delay in payment or wrongful deprivation of funds. Pls.' Mot. to Remand 8. Plaintiffs assert the interest contemplated by Oregon Securities Law is the type of interest that should be omitted from the amount in controversy pursuant to CAFA. *Id.*

Defendants argue "maximum recovery" in this litigation includes the interest provided by Oregon Securities Law—a core ingredient of Plaintiffs' principal demand. Defs.' Resp. in Opp'n 7–8, ECF No. 24. They assert CAFA omits interest resulting solely from a delay in payment to accrue interest for the sake of satisfying the amount in controversy. *Id.* 8. But the statute purportedly does not bar interest constituting an essential element of a plaintiff's damages. *Id.* By Defendants' math, since Plaintiffs seek consideration paid for their investments, interest at no less than 9%, and attorney fees, the Complaint alleges an amount in controversy exceeding $5 million. Defs.' Notice of Removal ¶¶ 11, 13 (citing Compl. (p.) 44).

As the parties observe, courts indeed have distinguished between interest that functions as "'a principal obligation'" and interest imposed as a penalty for delay. *Meding v. Receptopharm, Inc.*, 462 F.Supp.2d 348, 351 (E.D.N.Y. 2006) (quoting *Edwards v. Bates Cnty.*, 163 U.S. 269, 272 (1896)); *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (stating interest is considered part of the underlying amount in controversy when it arises solely because of a delay in payment). Where these parties disagree is whether the interest at issue has become a principal obligation or whether it serves as an accessory to Plaintiffs' alleged damages. Defs.' Resp. in Opp'n 11; Pls.' Mot. to Remand 11.

Here, this distinction is determinative. Interest essentially indistinguishable from Plaintiffs' substantive demand would factor into the jurisdictional calculation and raise the number above CAFA's $5 million threshold. *E.g., Brown v. Webster*, 156 U.S. 328, 329–30 (1895) (holding

interest as part of the "sum of the damage resulting from eviction" should be included in the amount in controversy, while interest as an "accessory demand" should not); *Ramos v. Bimbo Bakeries USA, Inc.*, No. CV 10-1125-PK, 2010 WL 5487535, at *3 (D. Or. Dec. 3, 2010) (noting *Brown's* exception to excluding interest from amounts in controversy); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473–74 (1st Cir. 1979) (distinguishing the instant case, in which the court omitted interest, from instances "where interest is an integral part of the damages at the time the claim arose").

Interest "is not counted if it 'was an incident arising solely by virtue of a delay in payment' of the underlying amount in controversy." *Narvaez*, 149 F.3d at 1271 (quoting *Brainin v. Melikian*, 396 F.2d 153, 154 (3d Cir. 1968)). The *Narvaez* court clarified the purpose of omitting interest is "'to prevent the delaying of a suit merely to accumulate the necessary amount for federal jurisdiction.'" *Id.* (quoting *Brainin*, 396 F.2d at 155). While the amount in controversy at issue in *Narvaez* arose under diversity jurisdiction (28 U.S.C. § 1332), its logic extends to amounts in controversy pursuant to CAFA. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) (discussing CAFA's amount in controversy requirement in the context of diversity jurisdiction's "long history").

Here, the Court concludes the disputed interest constitutes an integral part of the maximum damages Plaintiffs could reasonably recover. Plaintiffs allege violations of Oregon Securities Law, which allows purchasers to recover "the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS [§] 82.010 . . . or the rate provided in the security." Or. Rev. Stat. ("ORS") § 59.115(2)(a); Compl. ¶¶ 9, 87–93.

Together, the amount Plaintiffs paid for the contested securities, interest on that amount, and attorney fees equal "the sum of the damage resulting from" alleged violations of ORS

§ 59.115. *Brown*, 156 U.S. at 330. As in *Brown*, Plaintiffs' "demand was predicated on a distinct cause of action"—Defendants selling Wings&Arrow securities to the class, allegedly in violation of Oregon Securities Law. *Id.*; Compl. ¶¶ 88–90. Plaintiffs assert Defendants, "upon tender of the securities," are liable for the consideration paid and interest. Compl. ¶ 92. In the Court's view, Plaintiffs' Complaint conceives of the consideration paid and interest, both recoverable under Oregon Securities Law, as fundamental components of Defendants' potential liability.

Defendants reasonably included interest in their calculation of the amount in controversy to support removal. This might not be so had Defendants delayed making payments for the purpose of enhancing the amount in controversy to meet CAFA's jurisdictional threshold. But Plaintiffs have proffered no evidence to support such an allegation.

**b. Properly including interest in the amount in controversy, Defendants show the amount at stake exceeds $5 million.**

The Court proceeds to validate Defendants' accounting of the total amount in controversy, including interest. Plaintiffs take issue with Defendants' arithmetic, arguing they inflate the base amount in dispute. Pls.' Mot. to Remand 14–15; Pls.' Reply 4, ECF No. 26. Defendants purportedly "double-counted investments, relied on an erroneous accrual theory, and inflated the interest and attorney-fee estimate." Pls.' Reply 4. As Plaintiffs see it, the amount in controversy is overstated by at least $226,866.03. Pls.' Mot. to Remand 16.

Plaintiffs' Complaint alleges over $3 million in equity was sold to investors. Compl. ¶ 44. Typically, courts first look to a plaintiff's complaint to determine the amount in controversy. *Ibarra*, 775 F.3d at 1197. But because Plaintiffs argue the base amount is inflated, this Court relies on Form D filings and the parties' declarations instead. *E.g., Jauregui*, 28 F.4th at 992 (quoting *Dart Cherokee*, 574 U.S. at 87) (when a plaintiff challenges the proposed amount in controversy,

"'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied.'").

The parties agree Defendants sold $3,018,786 in securities to investors as of January 19, 2024. Compl. ¶ 44; Defs.' Resp. in Opp'n 18; Daniels Decl. Ex. C, ECF No. 25 (Securities and Exchange Commission Form D filed by Wings&Arrow on January 19, 2024). Plaintiffs maintain this amount reflects the total consideration paid by members of the putative class. Pls.' Reply 19. Yet as Defendants point out, Plaintiffs David Comden, Tina Comden, and Pamela Hellenbrand signed subscription agreements in March of 2024 for securities they purchased from Wings&Arrow. Defs.' Resp. in Opp'n 18–19; Comden Decl. ¶ 2, Ex. 1 at 1, ECF No. 19; Hellenbrand Decl. ¶ 2, Ex. 1, at 1, ECF No. 20. Defendants accordingly add the value of the March 2024 investments to the $3,018,786 amount disclosed in the January 2024 Form D. Defs.' Notice of Removal ¶¶ 14–15; Defs.' Resp. in Opp'n 20.

Plaintiffs assure the Court the $3,018,786 figure includes investments made *after* January 2024. Pls.' Mot. to Remand 16. But with only assurances, the Court doubts Plaintiffs' estimate reflects the March 2024 investments of nearly $75,000. Defs.' Notice of Removal ¶ 21; Defs.' Resp. in Opp'n 20. By a preponderance of the evidence, the principal investments at issue, without interest, total nearly $3.1 million. *See* Defs.' Resp. in Opp'n 20.

The Court also accepts Defendants' calculation of interest on the amount Plaintiffs paid in consideration for the securities. Defendants calculate interest at a rate of 9% from the date of purchase of a given security through February, 13, 2027, one year after Plaintiffs filed suit. Defs.' Notice of Removal ¶ 18. One year represents a conservative estimate from the date of filing until a judgment issues in this case.

Plaintiffs aver interest cannot run past the date they filed their Complaint. Pls.' Reply 15. However, Defendants illustrate the amount in controversy still exceeds $5 million should the Court stop counting interest in February 2026, rather than February 2027. Defs.' Resp. in Opp'n 20–21.

As for the interest rate, 9% is the minimum rate Plaintiffs request, making it a modest estimation. Defs.' Notice of Removal ¶ 18; Compl. 44. The Court determines principal and interest totals range between $3,938,674.70 and $4,183,779.69. Defs.' Resp. in Opp'n 20–21.

Plaintiffs challenge neither the inclusion of attorney fees nor Defendants' estimate of a 25% fee award. Compl. ¶ 93, (p.) 44; Pls.' Mot. to Remand, *passim*; Defs.' Notice of Removal ¶ 29. But this Court bears an independent obligation to ensure subject matter jurisdiction, which means finding a sufficient amount in controversy under CAFA. *E.g., Moe v. GEICO Indem. Co.*, 73 F.4th 757, 761 (9th Cir. 2023).

A projected attorney fee award amounting to 25% of the potential damages accords with Ninth Circuit precedent. *E.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming district court awarding attorney fees of 28% of the cash settlement fund); *cf. Arias*, 936 F.3d at 928 (noting an attorney fee estimate of 25% may well be reasonable, though declining to adopt a per se rule of 25% in class action suits). Considering the amount in controversy represents the maximum amount Plaintiffs can recover, the Court finds 25% a reasonable estimate. For the purposes of determining jurisdiction, then, attorney fees range between $1,181,602.41 and $1,255,133.91, which are added to principal and interest to determine the amount in controversy. Defs.' Resp. in Opp'n 20–21.[3]

Finally, Plaintiffs suggest the Court cannot adjudicate the amount in controversy without the "cap table," which Defendants possess. Pls.' Mot. to Remand 15–16. The "cap table" contains

---

[3] With these estimated attorney fees, the amount in controversy totals between $5,120,277.11 and $5,438,913.60. Defs.' Resp. in Opp'n 20–21.

exact investment amounts and dates. *Id.* 15. Plaintiffs demand the "cap table" because the Court "should not be left to guess" whether Wings&Arrow's Form D filings are accurate. *Id.* Beyond conclusory allegations, Plaintiffs produce no evidence to impugn Wings&Arrow's Form D filings. Defendants establish, by a preponderance of the evidence, the underlying amount in controversy exceeds $5 million.

## II. The Court is satisfied that the putative class exceeds 100 members for jurisdictional purposes.

Plaintiffs argue they "cannot know" how many investors actually qualify as putative class members. Pls.' Mot. to Remand 17. Since Plaintiffs relied on purportedly spurious public disclosures to estimate size of the class, they aver Defendants must "prove up" that it exceeds 100 members as required by CAFA. *Id.* 17–18; 28 U.S.C. § 1332(d)(5)(B).

Plaintiffs merely speculate Wings&Arrow's Form D filings cannot be trusted, which is insufficient to discount them, especially as their Complaint asserts a class size exceeding 100 members. Compl. ¶¶ 44, 81. Specifically, Plaintiffs state the January 19, 2024, Form D reports 122 investors. *Id.* ¶ 44, Pls.' Mot. to Remand 15. The Court does not obligate Defendants to identify the putative class in order to disprove Plaintiffs' allegation of class size. By a preponderance of the evidence, class size exceeds the minimum required by CAFA.

### CONCLUSION

Removal is proper and Plaintiffs' Motion to Remand, ECF No. 18, is **DENIED**. Accordingly, the Court declines to award attorney fees and costs to any party.

IT IS SO ORDERED.

DATED this 29th day of June 2026.

_____s/Michael J. McShane_____
Michael McShane
United States District Judge

10 – Opinion and Order